3477. ATLANTIC COAST LINE RAILROAD CO. v. WHITAKER.

HILL, C. J. The statutory presumption of negligence, raised by proof that the plaintiff's cow was killed by the running of the locomotive and cars of the defendant railroad company, was fully rebutted by the undisputed evidence; and, other than the presumption, there was no evidence whatever of negligence. The verdict against the company is therefore contrary to law, because without any evidence to support it. *Macon, Dublin & Savannah R. Co.* v. *Hamilton*, 9 *Ga. App.* 254 (70 S. E. 1126); *Southern R. Co.* v. *Harrell*, 119 *Ga.* 521 (46 S. E. 637).

*Judgment reversed.*

DECIDED DECEMBER 19, 1911.

Certiorari; from Decatur superior court—Judge Frank Park. May 10, 1911.

The railroad company was sued in a justice's court for damages on account of the killing of a cow by its cars, and a verdict was rendered against it for the alleged value of the cow. The case came to this court on exceptions to the overruling of the defendant's petition for certiorari, in which it was alleged that the verdict was contrary to law and the evidence.

At the trial the plaintiff testified, that his cow had been coming home every night until the night of July 10, 1902, but did not come home on that night, and he found her dead the next morning near the public-road crossing west of the defendant's station at Climax, and within a few feet of the railroad track, with injuries described, indicating that she had been killed by an engine. The defendant introduced two witnesses, one of whom testified as follows: "I am an engineer on the Atlantic Coast Line Railroad. I killed a cow on the date spoken of and about the same place spoken of, at the hour of 11:45 a. m. I did not kill this cow at this place at night. I did not have time to stop my engine. I was running about 35 or 40 miles an hour when I saw the cow. My engine was equipped with all the modern improvements and was in good shape. When I first saw the cow it was about 50 yards from me, on my right, and running towards the track. I was looking ahead carefully. When I saw the cow running towards the track I applied brakes and blew whistle. I tried to head her off by blowing whistle, but could not. I put on service brakes and checked the speed of my engine to about 20 miles an hour, when I struck the cow. I knocked her off on the south side of the track as she was crossing. I put on all the power of my service

air-brakes, but could not stop in time to save the cow. The emergency brakes are not allowed to be used, only in case of emergency, or when in danger of human life. I used all ordinary care and diligence to prevent killing the cow or injuring it, but could not do it. I saw the cow coming out of the woods, toward the track, and, had the woods not been near the track, probably I might have seen the cow in time to have saved knocking her off." The other witness for the defendant testified: "I was fireman on the engine . . at the time this cow was killed which Mr. Whitaker is suing for. Mr. Poundstone [the preceding witness] blew his whistle and put on brakes, at which time I was putting in fire, and as soon as he did this I jumped to my box on the left of the engine and looked ahead and saw the cow running to cross the track. Mr. Poundstone put on service brakes, which is the highest power brakes allowed to be used except in case of emergency. The engineer is not allowed to put on emergency brakes except in cases where there is danger to human life or serious danger to the train itself. Mr. Poundstone did all he could to prevent killing the cow, but could not do so under the circumstances. I rang the bell to frighten the cow away. The brake held perfectly, but could not stop the train in that distance."

*Pope & Bennet, R. G. Hartsfield,* for plaintiff in error, cited: 9 *Ga. App.* 254; 7 *Ga. App.* 138; 3 *Ga. App.* 197; 119 *Ga.* 521.

*G. G. Bower,* contra, cited: 7 *Ga. App.* 566, 780; 6 *Ga. App.* 308, 499.